# United States Court of Appeals
## For the First Circuit

No. 05-2728

UNITED STATES,

Appellee,

v.

ORLANDO MALPICA-GARCÍA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Hector M. Laffitte, U.S. District Judge]

Before

Lipez, Circuit Judge,
Selya, Senior Circuit Judge,
and DiClerico, Jr.,* District Judge.

Luis A. Guzmán Dupont for appellant.
Nelson Pérez-Sosa, Assistant United States Attorney, Chief,
Appellate Division, with whom Rosa Emilia Rodríguez-Vélez, United
States Attorney, was on brief for appellee.

June 6, 2007

---

*Of the District of New Hampshire, sitting by designation.

**DICLERICO, <u>District Judge</u>**.  Following a six-day trial, Orlando Malpica-García was found guilty of conspiring to possess and distribute drugs and of conspiring to possess and use firearms in furtherance of drug trafficking.  He appeals both convictions, arguing that the district court allowed hearsay testimony in violation of the Confrontation Clause of the Sixth Amendment and allowed testimony about his possession of a weapon that was not charged in the indictment in violation of the Fifth Amendment. Malpica-García contends that without the challenged testimony, the evidence is insufficient to support the conviction on either count.[1]

## I.

A federal grand jury returned an indictment on March 13, 2003, charging Malpica-García and twenty-six others with conspiracy to commit drug-related offenses beginning in June of 2001.  Later in the evening of March 13, a Puerto Rico police officer stopped a car on the Diego Expressway because it lacked a license plate. Malpica-García was the driver of the car and told the officer that he did not have a driver's license.  The officer ordered Malpica-García out of the car.  The police found a .38 caliber gun in the course of their inventory search of the car.

---

[1]At oral argument, Malpica-García's counsel conceded that the evidence would be sufficient if the challenged testimony were admissible.

Malpica-García was arrested on March 20, 2003. On July 17, 2003, a grand jury returned a superseding indictment, again charging Malpica-García and his co-defendants with drug-related offenses beginning in June of 2001. Malpica-García was tried separately from his co-defendants, some of whom pled guilty before his trial. Two of Malpica-García's alleged co-conspirators, Leonor Cuadrado-Figueroa and Edna Díaz-Pastrana, testified as government witnesses against him. They described drug operations and use of firearms by Malpica-García and others.

On July 1, 2005, the jury found Malpica-García guilty of conspiring to possess with the intent to distribute and distributing "five (5) kilograms or more of cocaine, and/or fifty (50) kilograms of cocaine base (crack), and/or one (1) kilogram or more, of heroin, within one thousand (1,000) feet of a public school" and of conspiring "to carry a firearm in relation to a drug trafficking offense." The jury found him not guilty on the third charge, which was possessing a firearm in a school zone. He was sentenced to 385 months of imprisonment on the first count and 240 months on the second count, to be served concurrently.

**II.**

Malpica-García contends that parts of the testimony given by Edna Díaz-Pastrana and Leonor Cuadrado-Figuero were admitted at trial in violation of the Sixth Amendment's Confrontation Clause, as interpreted in <u>Washington</u> v. <u>Crawford</u>, 541 U.S. 36 (2004). He

also contends that admitting evidence of the gun found in the car he was driving on March 13, 2003, constituted a constructive amendment of the indictment in violation of the Fifth Amendment. He asserts that without the challenged evidence, the evidence at trial would have been insufficient to support his conviction on either count.

## A. Confrontation Clause

In general, a district court's evidentiary rulings are reviewed for an abuse of discretion. When an essentially legal issue arises as to whether evidence has been admitted in violation of the Confrontation Clause, however, we review a properly preserved constitutional challenge de novo. United States v. Walter, 434 F.3d 30, 33 (1st Cir. 2006). In addition, we may affirm a district court judgment on any ground supported by the record. United States v. Ossai, --- F.3d ---, 2007 WL 1191139, *4 (1st Cir. Apr. 24, 2007).

In Crawford, the Court held "that the Confrontation Clause 'commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination.'" United States v. Gonzalez-Lopez, 126 S. Ct. 2557, 2562 (2006) (quoting Crawford, 541 U.S. at 61). Therefore, "a declarant's 'testimonial' out-of-court statement is not admissible under the Confrontation Clause unless (1) the declarant testifies, or (2) the defendant had a prior opportunity

for cross-examination and the declarant is unavailable, or (3) the evidence is admitted for purposes other than establishing the truth of the matter asserted." United States v. Maher, 454 F.3d 13, 19-20 (1st Cir. 2006) (internal citations omitted). The Confrontation Clause, as interpreted in Crawford, prohibits evidence of statements that are both hearsay and testimonial. See United States v. Brito, 427 F.3d 53, 61-62 (1st Cir. 2005).

### 1. Díaz-Pastrana

At trial, the prosecutor asked Edna Díaz-Pastrana how she began using or trafficking in drugs. She testified that she began to sell drugs through "Jaime" and that "[h]e was the one who would supply me with the drugs, and Jaime would get in touch with . . ." At that point, defense counsel interrupted her testimony with an objection, and a bench conference ensued. The court ruled that Díaz-Pastrana's statement was not hearsay.

The prosecutor then asked Díaz-Pastrana: "How do you know that Jaime got in contact with Orlando Malpica?" Defense counsel objected. A second bench conference was called, and defense counsel argued that Díaz-Pastrana's testimony was inadmissible under Crawford. The court instructed the prosecutor to begin with questions about information the witness had from Malpica-García. The prosecutor followed those instructions, and Díaz-Pastrana testified only about her personal knowledge of and

-5-

contact with Malpica-García.  The defense did not object to that testimony nor is that testimony challenged on appeal.

To come within the parameters of the Confrontation Clause, the testimony first must be hearsay.  <u>Brito</u>, 427 F.3d at 61.  Broadly stated, hearsay is an out-of-court statement that is offered as evidence of the truth of the matter asserted.  Fed. R. Evid. 801.  In the challenged part of her testimony, Díaz-Pastrana testified about her own actions that involved Jaime.  She did not testify as to any out-of-court statements made by Jaime. Therefore, the challenged testimony was not hearsay.

Malpica-García also contends that Díaz-Pastrana's testimony about his drug activities was inadmissible under <u>Crawford</u>.  She testified that "drug point" operators, meaning those who sold drugs at the public housing project where she lived and worked, had to pay Malpica-García money, called "prote," as protection from having the drug point closed down.  She named the drug point operators, including Carlitos Way, who paid Malpica-García "prote."

Defense counsel objected.  At sidebar, defense counsel represented that Díaz-Pastrana's testimony that Carlitos Way was a drug point operator who paid prote to Malpica-García was hearsay because she only knew that information from Carlitos Way's wife.[2]

_____

[2]In his appellate brief, Malpica-García states:  "This witness mentioned . . . a co-conspirator named Carlos D. Cruz Rodriguez a/k/a "Carlitos Way" and his wife that were not available for the

-6-

Defense counsel objected that Díaz-Pastrana's testimony violated the Confrontation Clause under <u>Crawford</u> because Carlitos Way was not available to testify. The district court ruled that the testimony was admissible as a statement of a co-conspirator. On appeal, Malpica-García argues that Díaz-Pastrana's testimony about Carlitos Way was inadmissible under <u>Crawford</u>.[3]

Díaz-Pastrana's testimony did not expressly include an out-of-court statement made by another declarant. If, as defense counsel asserted, her challenged testimony were based on an out-of-court statement by either Carlitos Way or his wife, rather than on Díaz-Pastrana's personal knowledge, the out-of-court statement must also be testimonial to render it inadmissible under <u>Crawford</u>. <u>See</u> <u>United States</u> v. <u>Hansen</u>, 434 F.3d 92, 100 (1st Cir. 2006).

In <u>Crawford</u>, the Court gave examples of the kinds of statements that would be testimonial: "ex-parte in-court testimony

defense . . . ." Contrary to that representation, Díaz-Pastrana did not mention Carlitos Way's wife. Defense counsel said at sidebar that Carlitos Way's wife was the source of Díaz-Pastrana's knowledge about him. Therefore, the jury never heard about Carlitos Way's wife.

[3]Although Malpica-García states that the challenged testimony did not qualify as co-conspirator statements under Federal Rule of Evidence 801(d)(2)(E), he provides no argument to support that assertion. In fact, Malpica-García refers to Carlitos Way as a co-conspirator in his brief. The defense's objection at trial and the issue raised on appeal is whether the testimony was inadmissible under <u>Crawford</u>. We need not and will not delve into the separate issue of whether the challenged testimony was admissible under Rule 801(d)(2)(E), in the absence of a developed argument on that issue. <u>See</u> <u>United States</u> v. <u>Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990).

(or its equivalent); statements contained in formalized documents (such as affidavits and depositions); and statements made as part of a confession resulting from custodial interrogation." Hansen, 434 F.3d at 100. Statements made during and in furtherance of a conspiracy are not testimonial. Crawford, 541 U.S. at 56; Hansen, 434 F.3d at 100; United States v. Sanchez-Berrios, 424 F.3d 65, 75 (1st Cir. 2005).

Crawford, however, did not provide a comprehensive formulation or definition of what statements would be deemed to be testimonial. United States v. Rodriguez-Marrero, 390 F.3d 1, 18 (1st Cir. 2004). Following Crawford, we have held that statements are not testimonial when they are made during a private conversation, when they are not included in formalized documents or made in response to interrogation or examination, and when they are not made "under circumstances in which an objective person would reasonably believe that the statement would be available for use at a later trial." Horton v. Allen, 370 F.3d 75, 84 (1st Cir. 2004); accord Hansen, 434 F.3d at 100. Testimonial statements are generally the product of a declarant's responses to official questioning and are made in a context in which the declarant should know that they will be preserved for prosecutorial use. See United States v. Maher, 454 F.3d 13, 22 (1st Cir. 2006); Brito, 427 F.3d at 60.

Assuming, but not deciding, that Díaz-Pastrana's testimony that Carlitos Way paid "prote" to Malpica-García was hearsay, the out-of-court statements were not testimonial within the meaning of Crawford. The record includes no indication that Díaz-Pastrana was repeating statements that Carlitos Way or his wife made to police, in an investigative context, or in a courtroom setting. Instead, such statements would have been made in the course of private conversations or in casual remarks that no one expected would be preserved or used later at trial. Therefore, even if Díaz-Pastrana's testimony were based on statements made by Carlitos Way or his wife, because those statements were not testimonial, the challenged testimony was not prohibited under Crawford.

## 2. Leonor Cuadrado

Malpica-García also challenges testimony given by Leonor Cuadrado about a meeting that occurred at the public housing project in early 2003 and about Malpica-García's dealings with another co-defendant known as "Motito." At trial, the defense objected to Cuadrado's testimony about the meeting and Malpica-García's dealings with Motito based on Crawford. The district court denied the defense's objections to that testimony.

In the first challenged statement, Cuadrado testified that Malpica-García and several of his co-defendants attended a meeting in front of building seven at the housing project. She

said that some of those attending the meeting wanted "drug points" in the project to be closed but Malpica-García opposed closing them. She further testified that although she saw the people who had congregated for the meeting, she did not attend and that her husband, who was there, told her what was discussed.[4] Cuadrado's challenged testimony about Motito was that he was a friend of hers who complained about Malpica-García asking him for "material" (meaning drugs) and money.

Neither the conversation about the meeting nor Motito's complaints about Malpica-García were testimonial statements within the meaning of Crawford. Instead, both were part of private conversations or were casual remarks made without any expectation that the information would be saved and used at a trial. Therefore, Crawford does not apply.

## B. Constructive Amendment of the Indictment

Based on the March 13, 2003, indictment, Malpica-García contends that the police officer's testimony at trial about stopping his car on the evening of March 13 and finding a gun in the car constituted a constructive amendment of the indictment. Malpica-García argues that because the grand jury returned the indictment at 5:09 p.m. on March 13, the stop and search of the car he was driving at 10:30 p.m. were not included in the offenses

---

[4]The person Cuadrado referred to as her husband is Jesus Encarnación Medina, known as "Chuchú," another co-defendant.

-10-

charged in the indictment. Based on that sequence of events, he asserts that the police officer's testimony about finding the gun was evidence of an offense not charged in the indictment, entitling him to a reversal of his conviction on the charge of conspiracy to carry a firearm in relation to a drug trafficking offense.

"A constructive amendment (fatal without regard to prejudice) occurs when the charging terms of the indictment are altered, either literally or in effect, by prosecution or court after the grand jury has last passed on them . . . ." United States v. Mueffelman, 470 F.3d 33, 38 (1st Cir. 2006) (internal quotation marks omitted). Therefore, "[a] defendant cannot complain of an improper constructive amendment if the indictment is actually amended by resubmission to the grand jury." United States v. Calderon, 77 F.3d 6, 10 (1st Cir. 1996).

In this case, Malpica-García's constructive amendment argument is based entirely upon the indictment returned on March 13, 2003. A superseding indictment, however, was submitted to the grand jury and was returned on July 17, 2003. The superseding indictment, in pertinent part, charged Malpica-García with conspiring to use, carry, or possess a firearm in furtherance of a drug trafficking crime from September 12, 2001, to March 13, 2003. Because the superseding indictment was returned months after March 13 and includes material events that occurred at any time during March 13, Malpica-García's argument based on the timing of the

-11-

previous indictment is unavailing.  Therefore, the prosecution did not constructively amend the indictment.

## C.  <u>Sufficiency of the Evidence</u>

As is noted above (see footnote one), Malpica-García's counsel conceded at oral argument that if the challenged testimony were properly admitted at trial, the evidence was sufficient to support the jury's verdict.  That being the case, we need not consider Malpica-García's argument on insufficiency of the evidence.

<u>        **Affirmed.**</u>