# United States Court of Appeals
## For the First Circuit

No. 08-1826

UNITED STATES,

Appellee,

v.

DARIO MANON,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul Barbadoro, U.S. District Judge]

Before

Boudin, Stahl and Lipez, Circuit Judges.

Sven D. Wiberg, with whom Wiberg Law Office, PLLC was on brief, for appellant.
Seth R. Aframe, Assistant United States Attorney, with whom Michael J. Gunnison, Acting United States Attorney, and Aixa Maldonado-Quiñones, Assistant United States Attorney, were on brief, for appellee.

June 23, 2010

**LIPEZ, <u>Circuit Judge</u>.** Appellant Dario Manon challenges his conviction on three drug distribution charges based on ineffective assistance of counsel. He argues, inter alia, that his trial attorney failed to (1) call important witnesses on his behalf, (2) timely arrange for a non-suggestive identification procedure, and (3) object to the admission of prejudicial hearsay evidence. Although we ordinarily do not consider ineffective assistance claims on direct appeal, Manon's claim is fully developed because the district court held a post-trial evidentiary hearing to explore his allegations. The court rejected the claim after hearing testimony from Manon and his attorney, finding neither constitutionally deficient performance by counsel nor prejudice to Manon. <u>See</u> <u>Strickland</u> v. <u>Washington</u>, 466 U.S. 668, 687 (1984). We affirm the district court's judgment denying Manon a new trial.

I.

**A. Trial Overview**

Manon was charged in a three-count indictment with distributing heroin and cocaine to an undercover police officer in three hand-to-hand transactions that took place in Manchester, New Hampshire, in June and July 2005. The officer, Detective Shawn McCabe, was one of three witnesses presented by the government at trial. The other two were Eddy Roa Medina, Manon's supplier, and Glenn Walichiewicz, a heroin addict who bought drugs from Manon,

-2-

sold drugs to McCabe, and made the connection between Manon and McCabe. All three men identified Manon in court as the individual who sold the drugs to McCabe.

Manon's attorney called no witnesses on his client's behalf, attempting instead to muster a defense of mistaken identity through cross-examination of the government's witnesses. Counsel sought to show that McCabe could not have obtained the drugs from Manon because the detective's description of the seller with whom he dealt omitted distinctive features of Manon's appearance, including a facial scar and a scar running the length of his right arm. Counsel also attempted to undermine Medina's and Walichiewicz's identifications by highlighting their motivation to exchange testimony favorable to the government for sentencing benefits.

To provide the necessary background for an evaluation of appellant's claim of ineffective assistance of counsel, we briefly recount the facts surrounding the three charged transactions as the jury could have found them and describe Manon's complaints about counsel's performance at trial.

## B. The Three Undercover Sales

### 1. The First Transaction

On June 20, 2005, McCabe made arrangements to purchase heroin from Walichiewicz, who had obtained the drug from Manon. When the men met for the exchange, Walichiewicz had a smaller

-3-

amount than McCabe wanted. Walichiewicz gave the officer Manon's cellular telephone number, 603-264-0390, so that McCabe could make direct contact with Manon. The next day, June 21, McCabe called that phone number and spoke to a male with a Spanish accent who identified himself as "Dario." McCabe told Dario that he was looking for about ten grams of heroin, and Dario told him he could take care of him. They arranged to meet at about 5 p.m. at the intersection of Granite and Barr Streets. At trial, McCabe described the Hispanic male who met him there – and who identified himself as Dario – as 5'5" to 5'6" tall, weighing approximately 115 pounds, with droopy earlobes and distinct lines around his nose and down his cheeks. About ten minutes later, Medina drove up in a brown Honda and told McCabe the "stuff" was coming from Massachusetts. The men waited for some time before McCabe left after asking Dario to call him when the heroin arrived.

The sale eventually took place on June 23. McCabe received two voicemail messages that day from Dario stating that he had what the detective was looking for. The calls originated from phone number 603-264-0390. Dario subsequently reached McCabe and asked him to come to his home. The officer went to the area of Granite and Barr at about 11 p.m., called Dario and then saw him exit from 485 Granite Street. Dario got into McCabe's vehicle, where he gave the officer a cylinder of heroin for which McCabe paid $900 in cash.

-4-

### 2. The Second Transaction

On June 28, 2005, Walichiewicz called McCabe from the same cellular phone number from which McCabe had received the voicemail messages from Dario. McCabe then spoke with Dario and was told an ounce of crack cocaine would cost $800. Dario transferred the phone to another Spanish-speaking male who identified himself as Dario's cousin, "Eddy." Eddy – i.e., Medina – confirmed the cocaine price. Shortly before 5 p.m., Dario called McCabe, again from the same telephone number, and told the detective that Eddy was on his way to Dario's house with the crack cocaine. When McCabe arrived at the Granite and Barr intersection a few minutes later, he called Dario, who again exited from 485 Granite Street and got into McCabe's vehicle. Medina arrived soon thereafter, and he and Dario went into 485 Granite Street for a few minutes. When the men emerged from the house, Dario returned to McCabe's car and, after a drive around the block, he gave the detective a plastic baggie containing crack cocaine. McCabe gave him $900 for the drugs.

### 3. The Third Transaction

On July 13, 2005, McCabe called Dario, again using the phone number originally given him by Walichiewicz, and asked the price for two ounces of crack cocaine. Dario told him $1,700, and he later called the officer back to tell him he could pick up the drugs at his house. A short time later, at about 6:15 p.m., Medina

-5-

called McCabe asking him to hurry. When McCabe arrived at the intersection of Granite and Barr, Dario and Medina were already standing outside. Dario got into the car with McCabe and, after they drove around for a bit, Dario gave the officer a plastic bag of crack cocaine in exchange for $1,700 in cash.

## C. The Complaints about Counsel's Performance

Attorney Paul Garrity was appointed to represent Manon shortly after Manon was indicted in September 2005 on three charges of heroin and cocaine distribution. During the pretrial period, Manon repeatedly requested new counsel, accusing Garrity of a variety of shortcomings. The court held a hearing on May 30, 2006, but concluded that new counsel was not warranted. Seven months later, Garrity filed a motion to withdraw, referencing a letter from Manon asking him to do so. The court denied the motion after another hearing on January 5, 2007, but appointed Manon's eventual appellate counsel, Sven Wiberg, to provide additional representation and advice to Manon. Wiberg withdrew before the trial, and Garrity represented Manon at the jury trial on March 6 and 7, 2007.

Following the jury's verdict against him, Manon submitted three motions for a new trial. In the first, filed pro se on March 21, he generally criticized Garrity's performance and said that he had been "misrepresented with lies that I never asked . . . my counsel Paul Garrity to say." When Garrity again moved to withdraw

-6-

as counsel, the court allowed the motion and Wiberg was appointed to take over.  The second motion for new trial, also filed pro se, challenged the admission of certain photographs at trial and stated that Manon regretted not testifying.  The court denied the motion and warned Manon that further motions should be presented to his new attorney before they were filed with the court.  In the third motion, filed by Wiberg on Manon's behalf on December 12, 2007, Manon claimed that Garrity had provided ineffective assistance by, inter alia, discouraging him from testifying, failing to call other witnesses that Manon had requested, and inadequately objecting to hearsay evidence.[1]  On December 21, while that motion was pending, the district court sentenced Manon to 180 months' imprisonment on each of the three counts of conviction, to be served concurrently, and three years of supervised release.

At the sentencing hearing, the court directed Manon to file a document specifying the instances of ineffective assistance by Garrity in support of his latest motion for new trial.  On December 31, 2007, Manon submitted a document titled "Specifications for Defendant's Motion to Vacate Convictions" that contained a list of fourteen items, including Garrity's failure to

---

[1] The government responded to this motion, as it had to the prior one, by arguing that it was untimely under Fed. R. Crim. P. 33(b)(2).  The district court agreed that the motion appeared to be too late, but nonetheless chose to deny it on the merits.  The parties have not argued about timeliness on appeal, and we therefore do not consider that issue.

(1) call certain allegedly exculpatory witnesses or present any defense, (2) arrange before trial for non-suggestive identification procedures at the trial, (3) probe the destruction of potentially exculpatory evidence, and (4) object to prejudicial hearsay evidence. The document also adopted the specific claims made in his previous filing.

On June 25, 2008, the district court held an evidentiary hearing on Manon's ineffective assistance claim. Garrity and Manon were the two witnesses. The court considered the four complaints listed above, as well as his earlier contention – described by the court as the "most significant potential argument" – that Manon had been denied the opportunity to testify. The court found no mistakes by counsel but also concluded that, even if counsel did err, no prejudice occurred in light of the substantial evidence of appellant's guilt and the nature of the asserted deficiencies. The court thus denied Manon's new trial motion.

On appeal, Manon no longer presses the right-to-testify or destruction-of-evidence claims, and we therefore do not address them. We consider the other three alleged failings of counsel explicitly considered by the court: (1) the failure to mount a defense case and call potential exculpatory witnesses, (2) the failure to timely arrange for an appropriate identification

-8-

procedure at trial, and (3) the failure to object to hearsay evidence.[2]

## II.

### A. The Ineffective Assistance Standard

To prevail on a claim of ineffective assistance of counsel, a defendant must show not only that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," but also that the deficient performance prejudiced the defense and deprived the defendant of a fair trial. Strickland, 466 U.S. at 687; see also Abrante v. St. Amand, 595 F.3d 11, 19 (1st Cir. 2010). To satisfy the deficient-performance prong, the defendant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment," and the court then determines whether, in the particular context, the identified

---

[2] Manon argues for the first time on appeal that Garrity should have called an expert to testify about eyewitness identifications, including cross-racial issues. That belated claim is waived, and we do not consider it. United States v. Carl, 593 F.3d 115, 124 (1st Cir. 2010). Manon did raise his ethnic background in the December 2007 document specifying the grounds for his motion to vacate his convictions, however, complaining that Garrity "presented no special voir dire regarding Mr. Manon's ethnic background and/or the jurors' attitudes toward Hispanics." Wiberg also questioned Garrity on that topic at the evidentiary hearing. Garrity explained that, based on his successful experience with other Hispanic clients charged with drug offenses, he did not consider Manon's ethnicity relevant. Manon does not discuss voir dire on appeal.

conduct or inaction was "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690.

The prejudice factor requires the defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is one 'sufficient to undermine confidence in the outcome.'" González-Soberal v. United States, 244 F.3d 273, 278 (1st Cir. 2001) (quoting Strickland, 466 U.S. at 694). In making the prejudice assessment, "we focus on the '"fundamental fairness of the proceeding."'" Dugas v. Coplan, 506 F.3d 1, 9 (1st Cir. 2007) (quoting González-Soberal, 244 F.3d at 278 (quoting Strickland, 466 U.S. at 696)).

Where the district court held an evidentiary hearing on an ineffective assistance of counsel claim, we review its factual conclusions for clear error and its legal conclusions de novo. Peralta v. United States, 597 F.3d 74, 79 (1st Cir. 2010) (per curiam); Dugas, 506 F.3d at 7-8. "[B]oth the performance and prejudice components of the ineffectiveness inquiry are mixed questions of fact and law," Strickland, 466 U.S. at 698, and the standard of review applied to such questions "'depends, in the last analysis, on the extent to which a particular question is fact-dominated or law-dominated,'" Dugas, 506 F.3d at 8. In this instance, we view the claims as primarily fact-based, and the

district court's conclusions are thus subject to clear error review.  See Dugas, 506 F.3d at 8.[3]  We would reach the same outcome, however, using a de novo standard.

**B.  The Cronic Exception**

Manon argues that this is an unusual ineffective assistance case because his difficulties with trial counsel surfaced early, and both he and Garrity sought to terminate their relationship before the trial.  Manon claims his concerns were validated when Garrity ignored his wishes about how to proceed at trial and, among other problems, mishandled the misidentification defense.  He suggests that the circumstances here would fit within the narrow category of ineffective assistance cases where prejudice is presumed because "counsel entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing."  United States v. Cronic, 466 U.S. 648, 659 (1984); see also Theodore, 468 F.3d at 56.  He also argues that actual prejudice was in any event demonstrated.

To qualify for the Cronic exception, "'the circumstances leading to counsel's ineffectiveness [must be] so egregious that the defendant was in effect denied any meaningful assistance at all.'" Theodore, 468 F.3d at 56 (quoting United States v. Griffin,

---

[3] One exception is the question whether a presumed prejudice standard applies in the circumstances of this case.  See infra Section B.  That mixed question is subject to de novo review. United States v. Theodore, 468 F.3d 52, 56 (1st Cir. 2006)

-11-

324 F.3d 330, 364 (5th Cir. 2003)) (alteration in original). As we noted in Theodore, courts have found that standard satisfied where counsel fell asleep during the presentation of evidence against the defendant, where counsel was silent throughout the trial, and "where counsel adopted and acted upon a belief that his client should be convicted." Id. (citing cases). The circumstances here are a far cry from such scenarios.

The defense theory as developed at trial was that Medina and Walichiewicz knew Manon and were accusing him out of self-interest, and that McCabe was mistaken in concluding that the drug seller, who identified himself as "Dario," was Dario Manon. Although Garrity did not put on witnesses of his own, he vigorously cross-examined each of the government's witnesses.

As the government correctly emphasizes, Garrity posed numerous questions to McCabe that were designed to show the inadequacy of the officer's investigation and to cast doubt on the reliability of his identification of Manon. The officer acknowledged, for example, that he took no fingerprints or DNA samples from the undercover vehicle where all three of the drug transfers occurred or from the plastic baggies containing the drugs; he had no recordings of the undercover buys or the telephone conversations leading up to them; he did not save two messages left by the seller in his cellular phone voicemail; and he had not included any description of the seller in his incident reports on

-12-

the sales other than that the individual was an Hispanic male. McCabe acknowledged in response to Garrity's questions that he had not noticed a scar on the seller's face during any of the transactions. After Garrity directed Manon to approach the witness stand, McCabe admitted that Manon's facial scar was visible.

Garrity also probed Medina's and Walichiewicz's motivations for testifying, emphasizing that Medina had written a letter to the government explicitly offering to testify against Manon in exchange for a motion under Federal Rule of Criminal Procedure 35(b)[4] and similarly eliciting Walichiewicz's concession that he could obtain early release from prison only if the government filed such a motion on his behalf. He also questioned Walichiewicz about his drug and alcohol abuse and mental illnesses, drawing the admission that he was continuously injecting himself with a mixture of cocaine and heroin during the relevant time period. Garrity also presented an opening statement and closing argument emphasizing the theme that "they have the wrong guy."

In sum, this is simply not a case in which defense counsel's performance was "tantamount to non-representation" entitling Manon to "Cronic's presumed prejudice standard." Theodore, 468 F.3d at 57. Rather, as we shall explain, we agree

---

[4] Under Federal Rule of Criminal Procedure 35(b)(1), a court may reduce a defendant's sentence if the government files a motion within one year after sentencing stating that the defendant had "provided substantial assistance in investigating or prosecuting another person."

with the district court that most of counsel's conduct was well within professional norms and that any flaws had no effect on the outcome.  The Constitution requires no more.  See Scarpa v. Dubois, 38 F.3d 1, 8 (1st Cir. 1994) ("[T]he Constitution pledges to an accused an effective defense, not necessarily a perfect defense or a successful defense.").

**C. The Failure to Mount a Defense Case**

Manon complains that Garrity failed to investigate and call witnesses who could have testified favorably in his defense. The attorney had designated two potential witnesses in advance of trial: Manon's wife, Alicia López, and his girlfriend's son, Tito Geraldy-Santiago ("Geraldy").  Manon's girlfriend, Sara Martinez, was neither on the list nor interviewed by Garrity, although she and her children lived with Manon during the relevant time period. Manon complains that Garrity was unaware of, or confused about, which woman was living with him.  He points out that it made no sense for López to be a witness because she lived out of state and could provide no helpful testimony about events transpiring at Manon's home during the summer of 2005.  He argues that, by contrast, Martinez and Geraldy could have testified about "the lack of drug distribution activity in their home" and provided other testimony rebutting the accusations made by the cooperating witnesses.  At the evidentiary hearing, Manon testified that Martinez was in the courtroom on the second day of the trial, along

-14-

with López and Geraldy, but that Garrity told him it was unnecessary to call any witnesses because the case was won without their testimony.

Although Garrity was confused at the evidentiary hearing about the two women – and, indeed, did not seem to be aware of Martinez – that confusion appears to be attributable to the limited information Manon had provided to Garrity about his personal life. Garrity testified that Manon had directed him to speak with López, not Martinez, and that his notes did not reflect any reference to Martinez. The possibility that Garrity did not know about Martinez because Manon had not told him about her is reinforced by Manon's post-trial filings. In his third motion for new trial, filed with Wiberg's assistance, Manon specifically raised the failure to call the two listed witnesses, López and Geraldy, but made no reference to Martinez.[5] In his later-filed Specifications, Manon again did not mention Martinez and referred only to Garrity's failure to

---

[5] The motion states, in part:

Mr. Manon insists that he expected that his counsel would call witnesses at trial, but that Mr. Garrity failed to do so, without his informed consent or permission. Mr. Manon further submits that those witnesses, including, but not limited to the individuals identified on the witness list submitted by his trial counsel (namely, Alicia Lopez and Tito Geraldy-Santiago), could have and would have provided exculpatory testimony on his behalf.

-15-

present testimony by either Manon or "one of the listed defense witnesses."[6]

Garrity explained that he originally had considered calling witnesses who knew Manon well to reinforce the mistaken identity defense by highlighting that his distinctive features would be difficult to miss. Ultimately, however, Garrity concluded that it was inadvisable to put witnesses who lived with Manon on the stand because he "didn't want to confirm . . . through a defense witness that in fact this individual, Dario Manon, lived at 485 Granite Street because that would, in my mind, link . . . the guy that the agent said was the seller, Dario, and my client Dario Manon."

Garrity also had other reasons for concern about what Martinez and Geraldy would say. Although Manon told Garrity that the boy would confirm that Manon had refused to sell drugs to an undercover agent who came to their home, Garrity testified that his

---

[6] Wiberg stated at the evidentiary hearing that the pleadings referred to López, rather than Martinez, because López was the listed witness who was available at the trial for testimony. As noted above, however, Manon testified that Martinez also was present at the second day of trial.

Manon did mention Martinez in a handwritten letter to the district court filed on December 19, 2006. In the letter, he complained that "I don't know what is happening in this case" and asked that Garrity be replaced with Wiberg, explaining "I don't like that man at all what he is doing in this case." The reference to Martinez did not relate to the trial, however, but was contained in his account of an incident in which he claimed the police stopped and searched her car for drugs when she was driving with her son's girlfriend.

investigator's interview with Geraldy was "totally inconsistent" with Manon's account of what happened. Garrity also testified that Manon had changed his story multiple times during their pre-trial conversations, and at one point had acknowledged involvement in the charged transactions.[7]

The district court concluded that Garrity made reasonable efforts to identify potential witnesses whose testimony would be favorable to Manon and that his decisions not to call the witnesses available to him were "defensible as tactical decisions." In our view, that assessment would be correct even if Manon had, as he claimed, told Garrity about Martinez and asked the attorney to call her and Geraldy as witnesses.[8] The investigator's report showed that Geraldy would not have provided the favorable testimony that Manon said he could give, and there is no basis for thinking that Martinez would have been a better witness. Wiberg was unable to contact Martinez before the evidentiary hearing and thus could not make a proffer of her likely testimony. Given what he knew,

---

[7] Garrity testified that, initially, Manon admitted selling the drugs but "couldn't understand that being a conduit could make him as culpable as someone who owned the drugs." Over time, he challenged the drug amounts, telling Garrity that he knew they were less than the government reported because he was involved in the dealing. Later, he told Garrity that he had not sold drugs and, in fact, had directed his son (presumably referring to Geraldy) to send the agent away when he came by their home looking to buy some.

[8] The district court had little regard for the truthfulness of Manon's testimony at the evidentiary hearing, stating that it had "no doubt that he provided . . . knowingly false statements about the material matters that he testified about."

-17-

Garrity could reasonably conclude that the risk of putting Martinez and Geraldy on the stand would outweigh any possible benefit from their testimony. We therefore agree with the district court that Garrity's failure to call them as witnesses was not a lapse of professional judgment. See Phoenix v. Matesanz, 233 F.3d 77, 81-83 (1st Cir. 2000) (noting that defense counsel's decision whether to call a particular witness is almost always strategic and observing that "'strategic choices . . . are virtually unchallengeable'" (quoting Strickland, 466 U.S. at 690) (emphasis omitted)).

Although we need not reach the prejudice prong of the Strickland test on this claim, much the same reasoning leads to the conclusion that Manon cannot show a probability that, but for counsel's chosen strategy, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Indeed, it is more likely that testimony from Martinez and Geraldy would have harmed, rather than helped, Manon's defense.

## D. Failure to Arrange in Advance for a Non-suggestive Identification Procedure

After McCabe had testified, but before the government called Walichiewicz and Medina to the witness stand, Garrity asked the district court to adopt measures to prevent the two remaining witnesses from seeing Manon at the defense table as they testified. The court rejected the request, stating that it should have been made earlier and that Garrity's primary suggestion that a screen be placed in front of Manon while the two men testified was

-18-

impractical and pointless.[9]  At the evidentiary hearing, Wiberg argued that Manon could have been seated in the gallery of the courtroom with other individuals to see if McCabe could pick him out of the crowd.

Manon contends that Garrity acted unreasonably in making the last-minute request for a non-suggestive identification procedure for Medina and Walichiewicz and, more importantly, in failing to make such a request at the proper time with respect to McCabe – whose supposed misidentification of Manon as the drug seller was a critical component of the defense theory.  McCabe testified that he had seen Manon for a total of about 45 minutes to an hour in the course of the three sales at issue in this case.  Manon points to the officer's failure to notice his "obvious scars" and asserts that McCabe's identification of him also was challengeable based on "cross-racial identification problems."  He insists that the missed opportunity to put McCabe on the spot rendered the misidentification theory "wasted, null and void."

---

[9] Non-suggestive procedures are meant, inter alia, to eliminate the risk that an eyewitness to a crime will describe the defendant's physical appearance or identify the defendant as the person who committed the crime based on factors other than the witness's knowledge – for example, because the witness sees the defendant at the defense table.  Among other reasons for denying Garrity's request for a screen, the district court noted that Walichiewicz had seen Manon in the cellblock where both of them had been held that morning and, as Garrity acknowledged, Medina apparently had had an extended association with Manon.  The court in effect concluded that, given the two witnesses' prior familiarity with Manon, his location at the defense table was not impermissibly suggestive.

The district court, however, observed that it would have been "extraordinarily risky" in an identification case to use such a procedure with a trained police officer who, according to his testimony, had seen the defendant in daylight on multiple occasions. If he "gets it right," the court asked, "what does that do to the credibility of the officer's testimony?" The court thus concluded that counsel's failure to take such a risk did not amount to deficient performance: "I don't think that kind of tactical judgment is one that can support an ineffective assistance claim."[10]

We agree. A confident identification by McCabe would have been fatal to the defense theory, erasing any doubts about whether the officer had correctly identified the defendant as the "Dario" from whom he had bought drugs. The circumstances strongly indicate that, in fact, the officer would have picked Manon from a line-up or other non-suggestive setting. The drug deals themselves, of course, are significant evidence of McCabe's familiarity with Dario-the-seller, involving multiple face-to-face encounters between the two men during daylight hours. In addition, Manon had told Garrity that McCabe had been at his home, both casually for a beer and in an attempt to buy drugs. McCabe identified Manon in photographs two days after the last of the

---

[10] Although Garrity undoubtedly made a tactical misjudgment in seeking a non-suggestive identification procedure for Medina and Walichiewicz, that request played no role in the case.

three charged transactions,[11] and the detective also was at the scene when Manon was arrested after exiting 485 Granite Street. Indeed, Garrity acknowledged at the evidentiary hearing that, based on what Manon had told him, he had no reason to believe that any of the three witnesses would be unable to identify his client. McCabe's failure to specifically refer to Manon's scars in describing him at trial does not diminish the force of this evidence, particularly where McCabe testified to other distinct facial features.

We thus discern no error in the district court's determination that Garrity acted within professional norms in not exposing McCabe to a non-suggestive identification procedure. Again, while we need not explicitly address the question of prejudice, our determination on the performance prong effectively disposes of Strickland's prejudice prong as well. As we have described, had counsel performed with respect to this issue as Manon claims he should have, the guilty verdict would have been even more likely.

**E.  Admission of Hearsay Evidence**

      1.  Medina's Letter to the Prosecutor

---

[11] McCabe testified that the photos displayed the physical characteristics he associated with the person from whom he bought the drugs: "[t]he distinct marks running from his nose along his cheek line," droopy earlobes and brown eyes.

Medina testified at trial that he offered to cooperate with law enforcement after Garrity sent him a letter asking if he would be willing to discuss "the acts alleged against Mr. Manon."[12] Instead of responding to Garrity, Medina wrote to the prosecutor proposing a quid pro quo: "If the Government[] provides me with a Lawyer, and negotiate[s] a Rule 35b[] with me I will testify against Dario Manon."[13] Medina's letter also admitted responsibility for drug trafficking:

> I plead guilty to my charges, and I even plead guilty to conduct that was accountable to Dario Manon. I know the Government case was strong against us.

Both letters were introduced at trial, with Garrity's assent.

In his post-trial motions and at the evidentiary hearing, Manon argued that Garrity should have objected to the introduction of Medina's letter on hearsay grounds. Garrity, however, testified that he had made the tactical decision not to object to the letter's admission because it was useful to impeach Medina by showing his motivation to assist the government. Indeed, Medina acknowledged during cross-examination that he knew Garrity had

---

[12] The letter asked if Medina would be willing to speak with Garrity or his investigator and explained that he was making the request because he had seen reports "indicat[ing] that you may have been present or have some knowledge of the acts alleged against Mr. Manon."

[13] The government did go forward with a Rule 35(b) motion recommending a reduced sentence for Medina. See United States v. Roa-Medina, No. 08-2490, 2010 WL 2181556, at *1 (1st Cir. June 2, 2010).

-22-

nothing to offer in exchange for his testimony, but that the government could ask the court to consider a reduced sentence under Rule 35.

Wiberg argued at the hearing that evidence of the proposed deal could have been obtained through testimony, or by means of an excerpt from the letter, and that introduction of the full letter – with the references to Medina's and Manon's guilt – was "[h]orribly prejudicial." The district court, however, observed that the letter was "an extraordinarily valuable piece of evidence Mr. Garrity exploited," that it needed to be presented in its entirety, and that the reference it contained to Manon's involvement in drug dealing was cumulative of Medina's testimony. The court said it viewed Garrity's decision to acquiesce in the admission of the letter as an astute tactical choice, not a ground for an ineffective assistance claim.

We have nothing to add to the district court's evaluation of this claim, which correctly applied the first prong of the Strickland analysis "with deference to counsel's professional judgment," United States v. Downs-Moses, 329 F.3d 253, 265 (1st Cir. 2003).

2. Walichiewicz's Testimony

The district court spent considerable time at the evidentiary hearing probing Manon's complaint that Garrity committed prejudicial error by failing to object on hearsay grounds

-23-

to testimony by Walichiewicz explaining how he met Manon.  The testimony was as follows:

AUSA:             How many opportunities did you have to
                  see this Dario Manon back in June 2005?
Walichiewicz:     About five times.
AUSA:             Where is it that you saw him?
Walichiewicz:     On the west side of Manchester,
                  I believe Barr Street and
                  Granite.
AUSA:             And how is it that you saw him at that
                  address?
Walichiewicz:     I was brought there by a person that
                  was a drug addict like myself.  I was a
                  heroin addict.
AUSA:             What was that person's name?
Walichiewicz:     George Kish.
AUSA:             Why did Mr. Kish bring you to Granite
                  and Barr?
Walichiewicz:     He said there was a guy there
                  that had drugs and that he
                  offered to do – in exchange for
                  us to do some plumbing and
                  install a bathroom for him, that
                  he'd give us drugs.

Walichiewicz testified that Manon was the person for whom the work was to be done, and he identified Manon in court.  Although Walichiewicz testified that he and Kish subsequently did the work for Manon, at an apartment at Granite and Barr, he did not say whether they received the promised drugs.

Wiberg argued at the evidentiary hearing that Garrity should have anticipated that the prosecutor's question about why Kish brought Walichiewicz to Granite and Barr might lead to problematic hearsay, and he thus should have objected to both the question and the resulting testimony.  Wiberg also argued that Garrity should have objected to the testimony based on Rule of

-24-

Evidence 404(b), which bars admission of evidence of prior crimes or other acts to prove character.  See Fed. R. Evid. 404(b).

The prosecutor explained that the testimony about the origin of the relationship between Walichiewicz and Manon was designed to reinforce the inference that Manon was the "Dario" with whom McCabe arranged drug deals at the cell phone number he got from Walichiewicz.  The prosecutor said he had not expected Walichiewicz to bring up the offer of drugs in exchange for plumbing work; Garrity, too, indicated that he was surprised by Walichiewicz's response.  Garrity did not recall his thought process once he heard Walichiewicz's testimony, but assumed that he did not object at that point because Walichiewicz had not named Manon and he did not want to draw attention to the testimony.  On cross-examination by Wiberg, however, Garrity acknowledged that Walichiewicz did identify Manon as the individual requesting the work.  Garrity surmised that, at trial, he originally viewed the questioning as "somewhat innocuous in that it wasn't specific to Mr. Manon, but then I have three people who are coming in to court saying he's the guy, so that the statement with Mr. Kish, I think, went by in the wash, and I don't believe the government ever referred to it."

The district court minimized the objectionable aspects of the evidence, noting that it arguably was appropriate background evidence rather than inadmissible hearsay.  The court also

-25-

concluded that "there's a good argument" that the evidence was admissible under Rule 404(b) on the issue of identity,[14] that it would survive scrutiny under Federal Rule of Evidence 403 because its probative value was greater than its prejudicial effect and, hence, that there was no error in Garrity's failure to object to Kish's testimony. Moreover, the court viewed any such error as harmless "[i]n the face of the overwhelming evidence of the defendant's guilt."

Like the district court, we see no need to definitively resolve whether Garrity's failure to object to Walichiewicz's testimony satisfies the <u>Strickland</u> requirement of deficient performance because Manon cannot make the requisite showing of prejudice. See, e.g., <u>Sleeper</u> v. <u>Spencer</u>, 510 F.3d 32, 39 (1st Cir. 2007) ("[A] reviewing court need not address both requirements if the evidence as to either is lacking."). Even without Walichiewicz's testimony about Kish's statements linking Manon to drugs and to a residence in the area of Granite and Barr Streets, the jury was confronted with substantial evidence of Manon's guilt. Walichiewicz, Medina and McCabe all identified him in court as the individual who sold drugs to McCabe. Medina testified that Manon introduced him to McCabe and that he saw Manon give drugs to

---

[14] Although Rule 404(b) bars admission of evidence of other crimes or acts to prove "the character of a person in order to show action in conformity therewith," it allows such evidence to prove, inter alia, identity. Fed. R. Evid. 404(b).

McCabe. The cell phone number that McCabe used to arrange the sales was linked to Manon through Walichiewicz, and the repeated use of that number was evidence of Manon's involvement in each transaction. The seller identified himself as "Dario," and Manon was arrested in the area where the sales occurred after exiting the same building from which McCabe had seen the seller emerging.

Although Manon claims that Garrity's conduct denied him the opportunity to present evidence that would have undermined the credibility of the witnesses – by means of Martinez's and Geraldy's testimony and a non-suggestive identification procedure – the jury was well aware of the cooperators' self-interest and also knew that McCabe had no physical evidence proving that Manon was "Dario." On this record, we cannot conclude that there is a reasonable probability that exclusion of Walichiewicz's challenged testimony would have altered the outcome of the trial.[15]

---

[15] Appellant's reliance on Crawford v. Washington, 541 U.S. 36 (2004), in support of his hearsay claim is misplaced. In Crawford, the Supreme Court held that the Confrontation Clause bars admission of testimonial hearsay in a criminal case unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination. United States v. Cruz-Diaz, 550 F.3d 169, 176 (1st Cir. 2008). Kish's statement is plainly not testimonial. See, e.g., United States v. Earle, 488 F.3d 537, 543 (1st Cir. 2007) (describing categories of testimonial statements); United States v. Malpica-García, 489 F.3d 393, 397 (1st Cir. 2007) (same). The Crawford argument is similarly inapplicable to the admission of Medina's letter, even were it to be considered testimonial. See, e.g., United States v. Cabrera-Rivera, 583 F.3d 26, 33 (1st Cir. 2009) (stating that testimonial out-of-court statements may be admitted where the declarant testifies at trial).

For the foregoing reasons, we affirm the district court's judgment denying Manon a new trial.

<u>So ordered.</u>