# United States Court of Appeals
## For the First Circuit

No. 08-1702

UNITED STATES OF AMERICA,

Appellee,

v.

ALFREDO CABRERA-RIVERA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José A. Fusté, U.S. District Judge]

Before

Torruella, Selya, and Dyk,[*]
Circuit Judges.

Dean Stowers, for appellant.
Julia M. Meconiates, Assistant United States Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, and Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, were on brief for appellee.

September 25, 2009

---

[*] Of the Federal Circuit, sitting by designation.

**DYK**, **Circuit Judge**.  Following a jury trial, Alfredo Cabrera-Rivera was convicted of three counts: (1) aiding and abetting in the interference of commerce by threats or violence in violation of 18 U.S.C. §§ 1951 and 2; (2) aiding and abetting in the use, carriage, and discharge of a weapon during and in relation to a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2; and (3) aiding and abetting in the possession of a stolen firearm in violation of 18 U.S.C. §§ 922(j) and 2.  All of the counts were connected with the robbery of an armored truck in Bayamón, Puerto Rico.  On appeal, Cabrera-Rivera contends that his convictions should be reversed because the government failed to establish a nexus to interstate commerce as required by the Hobbs Act, 18 U.S.C. § 1951.  Cabrera-Rivera contends alternatively that his convictions should be vacated and a new trial awarded because the district court permitted the government, over his objection, to use the out-of-court statements of Cabrera-Rivera's accused accomplices as evidence of his guilt. Although we find that the government established the required nexus to interstate commerce, we conclude that Cabrera-Rivera's Confrontation Clause rights were violated by the admission of hearsay evidence.  We accordingly vacate and remand.

**I.**

On August 10, 2006, a grand jury returned a three-count joint indictment against Elías Cruz-Marrero, Jonathan Baez-

-2-

Rodriguez, and appellant Cabrera-Rivera. Count one alleged that the three men "aiding and abetting each other, did unlawfully obstruct, delay and affect . . . commerce," to wit, by robbing a Loomis Fargo armored truck, in violation of 18 U.S.C. §§ 1951(a) and 2.[1] Counts two and three alleged related weapons charges under 18 U.S.C. §§ 924(c)(1)(A)(iii), 922(j), and 2. Cruz-Marrero's case was resolved by a guilty plea prior to jury selection, and jury selection proceeded with Baez-Rodriguez and Cabrera-Rivera as co-defendants. After jury selection, but before trial, Baez-Rodriguez's case was also resolved by a guilty plea, leaving only Cabrera-Rivera to proceed to trial on January 28, 2008.

For purposes of gauging the sufficiency of the evidence, we view the testimony presented at trial in the light most favorable to the verdict. United States v. Capozzi, 347 F.3d 327, 328 (1st Cir. 2003). We first describe the evidence apart from the disputed confessions of Cruz-Marrero and Baez-Rodriguez.

A robbery of a Loomis Fargo armored truck took place in Bayamón, Puerto Rico, on July 26, 2006, at approximately 5:45 p.m. Footage from a city surveillance camera system showed that a white Acura appeared to be following the Loomis Fargo armored truck

_____

[1] For purposes of 18 U.S.C. § 1951, "commerce" is defined as "commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; . . . and all other commerce over which the United States has jurisdiction." 18 U.S.C. § 1951(b)(3).

shortly before 5:30 p.m. and that at 5:33 the Acura was parked at a Total gas station. The Acura's license plate and occupants were not visible on the surveillance footage. Cabrera-Rivera's wife testified that on the early evening of July 26, 2006, she and Cabrera-Rivera drove to the Total gas station in Bayamón in a white Acura. Cabrera-Rivera's wife exited the car, and two men named "Elías" and "Jonathan" arrived and got into the car with Cabrera-Rivera. The three men then drove away.

Shortly after 5:30 p.m. that same day, employees at the Taco Bell restaurant in the Plazoletta Canton Mall in Bayamón noticed two suspicious men sitting at a table without consuming food. An employee later identified one of the two men as her neighbor, Elías Cruz-Marrero. At some point between 5:30 and 6:00, two Loomis Fargo employees on an armored truck route (Ricardo Miró and Jose Libran) made a stop at the Taco Bell to pick up the restaurant's cash deposit. It was raining as Libran, the driver, backed the armored truck into the parking space nearest the entry of the Taco Bell. Miró, the courier, left the rear compartment of the truck and entered the restaurant to retrieve a $4,153 cash deposit from the manager. After placing the cash from the restaurant manager into his courier bag and commencing his return to the truck, Miró paused at the door of the restaurant for several seconds to wait for the pouring rain to subside.

-4-

As he waited, the two men who had been sitting at the table and a third man standing outside the door surrounded Miró. Two Taco Bell employees later identified Cabrera-Rivera as the man outside the door. One of the assailants hit Miró on the back of the head, informed him he was being robbed, and took the bag containing the cash. The assailants took Miró's pistol from his holster and forced him outside and into the back of the truck. The men demanded that Miró open the truck's vault; after Miró explained that he did not have access to it, one of the assailants shot him in the leg before leaving the truck. Miró later identified the man who shot him as Jonathan Baez-Rodriguez. Upon realizing that the assailants had exited the truck, Libran drove away together with Miró.

Witnesses testified that three men were seen fleeing the scene on foot. Although no witness testified to the presence of a white Acura at the Taco Bell, a witness did testify that at approximately 6:20 p.m., about half an hour after the robbery, two persons in a white Acura with license plate number CDB 901 checked into the Las Villas motel in Bayamón. It was established that Cabrera-Rivera's Acura bore license plate number "CDB 901." The witness who testified that the Acura was at the motel did not identify either of the car's two occupants. A police officer did testify that, approximately two weeks after the robbery, he saw Cabrera-Rivera driving in his white Acura.

At trial the government sought to introduce (over Cabrera-Rivera's objection) various out-of-court statements allegedly made by Cabrera-Rivera's alleged accomplices, Baez-Rodriguez and Cruz-Marrero. First, the government presented the testimony of FBI special agent Carlos Torres, the case agent assigned to the robbery investigation. Torres had interviewed Cruz-Marrero after the robbery. The following exchange occurred between the court, the government's prosecutor (Mr. Bazan), and defense counsel:

> Mr. Bazan: Sir, at the time Elias [Cruz-Marrero] was arrested, was he advised of his rights?
>
> The witness: Immediately after, yes, sir.
>
> Defense counsel: Your Honor, we may have a <u>Bruton</u> objection.
>
>    . . . .
>
> Mr. Bazan: What action did you take? First of all, did Mr. Elias admit to his participation in the robbery?
>
> Defense counsel: Objection, Your Honor.
>
> THE COURT: Overruled. He can tell us that.
>
> The witness: Yes, he did.

Following the court's ruling and a follow-up question by the court, the government continued to question agent Torres about the information obtained through Cruz-Marrero's confession:

> THE COURT: Okay. So Elias said he confessed before you basically.

-6-

The witness:    Yes, sir.

THE COURT:      And I bet he gave you some additional information. He wants to know, without giving the specifics, what is it you do as a result of the other information he gives you.

The witness:    We located the house of the second individual that was involved in the robbery. And, as a result of that information and information alone, we were able to obtain a search warrant and arrest warrant for the second individual, which was arrested on the same day hours after Elias had been arrested by us.

Mr. Bazan:      And who was that second individual?

The witness:    Jonathan Baez Rodriguez.

        . . . .

Mr. Bazan:      Sir, what other location, if any, did you go to obtain evidence pursuant to this interview with Elias Cruz-Marrero?

The witness:    We went to Las Villas Motel in Levittown area I believe. Either Levittown or the town adjacent to that. And we were able to retrieve a log that . . . the motel personnel prepared on a daily basis that shows a car with the description that matched the same car Elias has provided in interrogation entering the motel minutes after the robbery had taken place.

Mr. Bazan:      Now, this information about the motel, did you take that information from Elias Cruz?

The witness:    Yes, sir.

-7-

| | |
|---|---|
| Mr. Bazan: | Now, of course . . . Elias Cruz-Marrero spoke to you. Did he admit his participation in the robbery? |
| The witness: | Completely, yes, sir. |
| Mr. Bazan: | And pursuant to that admission of his participation, did he——what else did he admit as to the part of the robbery? Did he receive a part of the robbery? |
| Defense counsel: | Objection, Your Honor. |
| | . . . . |
| Mr. Bazan: | What amount of money did Mr. Elias Cruz-Marrero receive as his participation in the robbery? |
| The witness: | 11 hundred dollars, sir. |

Another agent later testified that the subsequent search of Jonathan Baez-Rodriguez's house turned up the $1,100. Finally, agent Pablo Rivera of the FBI task force took the stand and the following exchange occurred concerning Jonathan Baez-Rodriguez:

| | |
|---|---|
| Mr. Bazan: | Did he agree to waive his rights and give you a statement? |
| The witness: | Yes, he did, sir. |
| Mr. Bazan: | Now, please pay attention to the question I'm going to ask you right now. Did he admit to participating in the robbery at Taco Bell on the 26th of July, 2006? |
| Defense counsel: | Objection, Your Honor. |
| THE COURT: | Overruled. |
| Defense counsel: | Mr. Jonathan Baez is not here to—— |
| THE COURT: | It doesn't matter. Whether he admitted or not, that's all. |

-8-

```
The witness:      Yes, he did, sir.

Mr. Bazan:        And did he admit what, if any, was his
                  participation in the robbery?

The witness:      Yes, he did, sir.

       . . . .

Mr. Bazan:        Now, aside from being a look out at the
                  Texaco gas station, according to him,
                  how much, if any, did he admit to
                  receiving as part of the proceeds of
                  the robbery?

The witness:      $300, sir.
```

At the close of the government's evidence, Cabrera-Rivera made a motion pursuant to Rule 29 of the Federal Rules of Criminal Procedure for a judgment of acquittal, which was denied. On January 30, 2008, the jury returned a verdict of guilty on each of the three counts of the indictment. On May 1, 2008, the district court sentenced Cabrera-Rivera to 183 months' imprisonment. Cabrera-Rivera timely appealed, and we have jurisdiction under 28 U.S.C. § 1291.

**II.**

**A. Federal Jurisdiction Under 18 U.S.C § 1951(a)**

On appeal, Cabrera-Rivera first urges that his conviction should be reversed because the government failed to adduce sufficient evidence that the robbery affected commerce, as required by 18 U.S.C. § 1951(a). The parties dispute the appropriate standard of review to be applied to Cabrera-Rivera's challenge to the sufficiency of the evidence on this element of the crime.

Cabrera-Rivera contends that de novo review is required because he properly preserved his objection, see United States v. Rodriguez-Casiano, 425 F.3d 12, 14 (1st Cir. 2005), while the government argues that Cabrera-Rivera did not properly raise this theory below and thus our review is for only "plain error," United States v. Rivera-Rivera, 555 F.3d 277, 285 & n.7 (1st Cir. 2009).  We need not resolve this dispute, because Cabrera-Rivera's challenge fails under even the less deferential standard of review.

The Hobbs Act, under which Cabrera-Rivera was convicted, provides that "[w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion . . . shall be fined . . . or imprisoned . . . ."  18 U.S.C. § 1951(a) (emphasis added).[2]  To prove that a robbery violated the provisions of the Hobbs Act, the government need demonstrate only "a de minimis interference with commerce."  Rivera-Rivera, 555 F.3d at 286 (quotation marks omitted).  When a business is the victim of a robbery, an effect on interstate commerce may generally be demonstrated by showing "(1) the business engaged in interstate commerce, and (2) that the

---

[2]     We note that in addition to interstate commerce, 18 U.S.C. § 1951(b)(3) also includes within the definition of "commerce" any "commerce within . . . any Territory or Possession of the United States." (Emphasis added.)  Because the government does not rely on the alternative definition of "commerce" in § 1951(b) and the general allegations of the indictment refer to "interstate commerce," we need not decide whether that broader definition would be satisfied here.

robbery either depleted the assets of the business . . . or resulted in the business's temporary or permanent closure." Id. (citing Rodriguez-Casiano, 425 F.3d at 15, and United States v. Cruz-Rivera, 357 F.3d 10, 14 (1st Cir. 2004)).

There is no serious question but that Loomis Fargo, a company engaged in the transportation of money "from the Federal Reserve to places of business or vice versa," was a business engaged in interstate commerce. The evidence presented by the government was also sufficient for the jury to conclude that the robbery depleted Loomis Fargo's assets. Loomis Fargo assumed the loss of the more than $4,000 taken from its custody during the robbery. Additional testimony established further effects on commerce from the robbery: Loomis Fargo's operations on the route were disrupted, and other business clients did not receive services that day due to the robbery. Taken as a whole, the government's evidence of the robbery's effect on interstate commerce was sufficient to support the jury's verdict. See Capozzi, 347 F.3d at 335 (government need show only "a realistic probability of a de minimis effect on interstate commerce")(quotation marks omitted)(citing United States v. Butt, 955 F.2d 77, 80 n. 2 (1st. Cir. 1992)).

### B. Confrontation Clause Objection

Cabrera-Rivera also contends that his convictions on all three counts should be vacated and a new trial awarded because the

-11-

government made improper use of out-of-court statements of his alleged co-participants, Cruz-Marrero and Baez-Rodriguez, in violation of Cabrera-Rivera's Sixth Amendment confrontation right.[3]

The Confrontation Clause of the Sixth Amendment to the Constitution provides that a criminal defendant "shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend. VI. In Crawford v. Washington, the Supreme Court made clear that the Confrontation Clause generally prohibits the admission of testimonial out-of-court statements against a criminal defendant. 541 U.S. 36, 68 (2004); see also United States v. Earle, 488 F.3d 537, 542 (1st Cir. 2007) ("Crawford held that the Confrontation Clause bars admission of testimonial hearsay in a criminal case unless the declarant is unavailable and the accused has had a prior opportunity for cross-examination."). There is no dispute that the out-of-court confessions of Elías Cruz-Marrero and Jonathan Baez-Rodriguez, "taken by police officers in the course of [custodial] interrogations," are testimonial in nature. Crawford, 541 U.S. at 52. Thus, unless the statements fall within one of the narrow categories of out-of-court

---

[3]    Cabrera-Rivera contends, and the government apparently does not dispute, that a reversal of Cabrera-Rivera's conviction on count one (interference with commerce by robbery under 18 U.S.C. § 1951) would in this case be sufficient to require reversal of the convictions on the two related weapons counts under 18 U.S.C. §§ 922(j) and 924(c)(1)(A) as well.

testimonial statements that do not offend the Confrontation Clause, admission of the statements at trial was improper.

This court has identified three circumstances where out-of-court statements, though testimonial, may nevertheless properly be admitted into evidence: where "(1) the statement is not hearsay in that it is being admitted for a purpose other than establishing the truth of the matter asserted; (2) the declarant testifies at trial; or (3) the defendant had a prior opportunity to cross-examine the declarant and the declarant is unavailable." United States v. Cruz-Diaz, 550 F.3d 169, 176 (1st Cir. 2008).

On appeal, the government relies solely upon the first exception, contending that the statements of Cruz-Marrero and Baez-Rodriguez (through the testimony of agents Torres and Rivera) are not hearsay. Thus, the government argues, the introduction of the confessions raises no Confrontation Clause problem because "the statements were not admitted to prove the truth of the matter asserted, but rather to put the investigation into context." Appellee's Br. 16. As this court has previously noted "officers should not be put in the misleading position of appearing to have happened upon the scene" of the crime and "therefore should be entitled to provide some explanation for their presence." United States v. Maher, 454 F.3d 13, 20 (1st Cir. 2006) (quoting 2 Broun et al., McCormick on Evidence § 249, at 103 (5th ed. 1999)). The government argues that it should equally be able to provide context

for the discovery of other evidence, such as the registration card obtained at the Las Villas motel.  Appellee's Br. 17.[4]

Although "[s]ometimes the rationale that an out-of-court statement provides context for other admissible evidence will be valid," it is plainly not the case that every "statement by an informant to police which sets context for the police investigation" is admissible.  Maher, 454 F.3d at 22.  Such an "impossibly overbroad" rule would allow the so-called "context" exception to effectively eviscerate the protection against testimonial hearsay provided by the Sixth Amendment and recognized in Crawford.  Id.; see also United States v. Silva, 380 F.3d 1018, 1020 (7th Cir. 2004) ("Allowing agents to narrate the course of their investigations, and thus spread before juries damning information that is not subject to cross-examination, would go far toward abrogating the defendant's rights under the sixth amendment and the hearsay rule.").

There are two basic problems with the government's context theory here.  First, the out-of-court statements were used

---

[4]    See United States v. Jiménez, 419 F.3d 34, 44 (1st. Cir. 2005).  See also Cruz-Diaz, 550 F.3d at 178 ("Out-of-court statements offered not to prove the truth of the matter asserted but merely to show context——such as a statement offered for the limited purpose of showing what effect the statement had on the listener——are not hearsay.")(citing United States v. Bailey, 270 F.3d 83, 87(1st Cir. 2001); United States v. Walter, 434 F.3d 30, 34 (1st Cir. 2006) (informer's out-of-court statements during taped "sting" admissible are not hearsay when necessary to provide context for defendant's responsive admissions on tape).

to emphasize the guilt of Cabrera-Rivera's alleged accomplices, rather than to provide context for the discovery of other admissible evidence. A central contention of the government's case was that three men were involved in the robbery; the jury was aware that Cruz-Marrero and Baez-Rodriguez were named with Cabrera-Rivera in the indictment. The jury had additional knowledge that Baez-Rodriguez was previously Cabrera-Rivera's co-defendant, as jury selection proceeded with both men to be tried jointly. In opening statements, the government referred to Cruz-Marrero and Baez-Rodriguez as Cabrera-Rivera's "co-defendants." The emphasis on Cabrera-Rivera's co-participants' admissions of guilt directly suggested that Cabrera-Rivera was guilty as well.

This improper purpose is particularly glaring with respect to the testimony concerning the amount of money that Baez-Rodriguez and Cruz-Marrero received. The government elicited from the FBI agents not only the mere fact of confession by Cruz-Marrero and Baez-Rodriguez, but also detailed testimony of how much money each admitted to having received from the robbery. These additional details—that Cruz-Marrero admitting to having received $1,100 and Baez-Rodriguez $300—bore no relevance to the police investigation of Cabrera-Rivera and added no necessary "context." Their only purpose was the improper purpose of demonstrating that the two men had in fact participated in the robbery. The government made considerable use of this evidence in its closing

argument to directly suggest that Cruz-Marrero's and Baez-Rodriguez's statements somehow established the guilt of Cabrera-Rivera as well:

> You will also remember that among the things that Elías Cruz-Marrero told the FBI is that his participation in the robbery was $1,100. <u>So in order to prove this case beyond reasonable doubt</u>, I brought evidence of a search warrant that was made at the home of Jonathan Baez.
>
> <u>And [lo] and behold, what amount of money did we find at his house? In different places of the house $1,100.</u>  The exact number the other aider and abetter, Elías, had also received as his participation in the robbery.
>
> <u>So you put that together, you make a determination of participation, of aiding and abetting, of being part and attempting to obtain a result by way of the robbery of an armored truck.</u>

Such use of the unconfronted, out-of-court confessions of Cruz-Marrero and Baez-Rodriguez contradicts the government's contention that the statements merely provided "context" for the government's investigation.  <u>See</u> <u>Crawford</u>, 541 U.S. at 40, 66 (noting that prosecution "relied on [the challenged hearsay] in closing, arguing that it was 'damning evidence'").

Second, the government's context theory with respect to investigative leads has no relationship to the testimony concerning Baez-Rodriguez's confession; the government did not contend that Baez-Rodriguez provided any investigative leads.  The government points out that Cruz-Marrero was the source of investigative leads, but the government fails to show why the details as to Cruz-

Marrero's confession were necessary to explain the investigative source. As this court has previously noted, the government could simply have had the officers testify that they discovered the evidence based on "information received." Maher, 454 F.3d at 20 (quoting 2 Broun et al., McCormick on Evidence § 249, at 103 (5th ed. 1999)). In any event, the government's supposedly benign purpose for introducing evidence of Cruz-Marrero's out-of-court statements is belied by the use that the government made of those statements in closing argument. The government used Cruz-Marrero's statements concerning the motel to argue that one of the admitted robbers, Cruz-Marrero, within minutes of the robbery had driven to a motel in Cabrera-Rivera's white Acura with Cabrera-Rivera. While the government had independent evidence establishing that the Acura had been driven to the motel shortly after the robbery by two men, Cruz-Marrero's out-of-court statements were the sole basis for the government's argument that the two men were Cruz-Marrero and Cabrera-Rivera. Specifically, the government argued:

> So [Cruz-Marrero] gets arrested. <u>So he gets debriefed, and among the things he tells is that there was a point in time after the robbery that he went to a motel. Not any motel. Las Villas Motel.</u>
>
> And then you have the owner of Las Villas Motel who came to testify here. And she brought the record of her business, this card, this green card and this print out. What's important about this green card? It has the license plate number of the white Acura. CDB 901.
>
> When you deliberate, you can look at the pictures of the white Acura, which was found by the FBI last November in the house of [Cabrera-Rivera's] sister-in-law. And

-17-

you will notice the license plate, CDB 901.  Same car, same Acura, same license plates, which went to Las Villas Motel in Levittown at 6:20 in the afternoon.  <u>When you deliberate, you just think why did they went to this motel from 20 minutes after the robbery was committed.</u>

In rebuttal argument the government continued to make heavy use of Cruz-Marrero's confession to link Cabrera-Rivera to the robbery:

> How did Cabrera get to the Taco Bell? In his white Acura.  How else?  <u>How did he get to Las Villas Motel? In his white Acura.</u>
>
> <u>There were two persons inside the car when he got to the Las Villas Motel.</u>  Well, those are facts of life.  But among the inferences that you can make as judges of fact, legal inference, <u>why would someone who just robbed an armored truck go to a motel?  Among the legal inferences that you can make is they went to hide in there.  They wanted to have an alibi.</u>
>
> But the evidence is there.  <u>It's a cold, hard fact that they were in Las Villas Motel in the white Acura, same license plate, and this is information that the FBI obtained from a co-defendant, from [Elías] Cruz, that he had gone to Las Villas Motel.</u>

The government's argument in particular was that Cruz-Marrero's confession (the information "that the FBI obtained from a co-defendant, from [Elías] Cruz") established as "a cold, hard fact that they [Cruz-Marrero and Cabrera-Rivera] were in Las Villas Motel in [Cabrera-Rivera's] white Acura" and went to hide there because they wanted to have an alibi.

Because the testimonial out-of-court statements at issue here were offered and used for the truth of the matters asserted, their admission was improper.

## C. Waiver and Harmlessness

Nevertheless, the government contends that Cabrera-Rivera forfeited his Crawford argument, and that even if the argument was not forfeited, any error was harmless. Neither contention is persuasive.

First, the government argues that Cabrera-Rivera forfeited his Crawford argument because he did not specifically object to the introduction of the out-of-court statements on Crawford grounds, instead objecting only under Bruton v. United States, 391 U.S. 123 (1968). The government is correct that, as a general matter, an objection on one ground does not preserve appellate review of another potential ground for objection, and thus a Bruton objection does not preserve a Crawford objection. United States v. Ziskind, 491 F.3d 10, 14 (1st Cir. 2007); see also United States v. Mercado, 412 F.3d 243, 247 (1st Cir. 2005).

We disagree, however, with the government's contention that Cabrera-Rivera's objections were insufficient to raise the Crawford objection. To be sure, Cabrera-Rivera's counsel referenced Bruton the first time the government attempted to elicit the statements from special agent Torres. When taken in the context of the facts of the case, however, we think the better reading of that objection is that it was in fact a short-hand reference to an objection on confrontation grounds. Notably, at the time the objections to the out-of-court statements were made,

-19-

no co-defendant was on trial with Cabrera-Rivera. Accordingly, making a literal <u>Bruton</u> objection would have made no sense. <u>See, e.g.</u>, <u>Cruz-Diaz</u>, 550 F.3d at 178 (<u>Bruton</u> error typically "involv[es] the admission of a non-testifying <u>codefendant's</u> <u>out-of-court</u> statement <u>during a joint trial</u> for the purpose of proving the truth of the matter asserted" (second emphasis added)). In context it was obvious that counsel was objecting to Cabrera-Rivera's inability to confront the declarant. Counsel's other objections made clear that Cabrera-Rivera was objecting because of his inability to cross-examine the alleged accomplices. <u>See, e.g.</u>, Tr. Transcript (Jan. 29, 2008), at 121 ("Objection, Your Honor . . . Mr. Jonathan Baez is not here to——"). We conclude that Cabrera-Rivera's objections were sufficient to preserve his <u>Crawford</u> challenge.

Second, the government argues that even if the out-of-court statements were improper, their admission and use amounted to harmless violations of the Constitution. Even if evidence is admitted in error, we may affirm a judgment of conviction where the government has met "its burden of showing that any such error was harmless beyond a reasonable doubt." <u>Earle</u>, 488 F.3d at 545. In evaluating harmlessness, we consider a number of factors, including whether the challenged statements were central to the prosecution's case; whether the statements were merely cumulative of other (properly admitted) evidence; the strength of corroborating or

contradicting evidence; the extent to which cross-examination was permitted; and the overall strength of the case. Id. at 546.

The government argues that there was alternative evidence (eye witness testimony) that Cruz-Marrero and Baez-Rodriguez had participated in the robbery. This other evidence does not, however, render admission and use of those confessions harmless. The Supreme Court in Bruton characterized extrajudicial statements of a codefendant as being "powerfully incriminating" and "devastating" to the defendant. 391 U.S. at 135-36. In Cruz v. New York, the Supreme Court again recognized the devastating potential of such evidence even if the jury is instructed not to consider it against the defendant. 481 U.S. 186, 193 (1987). In any event, as discussed above, the Cruz-Marrero and Baez-Rodriguez confessions supplied information not available from other witnesses.

The government also argues the other evidence against Cabrera-Rivera was overwhelming. The overall strength of the evidence against Cabrera-Rivera (absent the improperly admitted statements of his alleged accomplices), while sufficient to support a jury verdict of conviction, cannot fairly be characterized as overwhelming. While there was evidence linking Cabrera-Rivera to Cruz-Marrero and Baez-Rodriguez immediately before the robbery, the eyewitness identifications of Cabrera-Rivera at the robbery scene were less than compelling. Although two Taco Bell employees did

identify Cabrera-Rivera from photo spreads, neither they nor the Loomis Fargo employees identified Cabrera-Rivera as being one of the assailants, and witnesses at trial did not even agree whether two men or three had been involved in the robbery. The challenged statements of Cabrera-Rivera's alleged accomplices featured centrally in the government's closing arguments. The statements were not merely cumulative of other evidence independently establishing the same facts. In such circumstances, we are unable to conclude with confidence that "[t]he government has proved beyond a reasonable doubt that [Cabrera-Rivera] would have been convicted even if the [statements] had not been admitted into evidence." Earle, 488 F.3d at 546.

## III.

For the reasons set forth above, we vacate the judgment of conviction and remand to the trial court for further proceedings.

It is so ordered.