HOWARD, Circuit Judge.
Appellant Dennis Liriano was convicted of conspiracy to possess with intent to distribute a controlled substance, in violation of 21 U.S.C. § 846. After denying Liriano’s post-trial motions, the district court sentenced him to eighty-four months of incarceration. Liriano argues on appeal that the evidence at trial was legally insufficient to support the conviction and that various trial errors, either individually or cumulatively, warrant reversal of his conviction. We reject each of Liriano’s appellate advances and affirm his conviction.

I. BACKGROUND FACTS

In evaluating Liriano’s claim that the evidence was insufficient to support his conviction, we recount the facts in the light most favorable to the verdict. United States v. Davis, 717 F.3d 28, 29-30 (1st Cir.2013).[1] We first outline the basic facts *134 of conviction, adding more details as they become relevant to particular arguments.
On the night of June 17, 2009, United States Border Patrol Agents Christopher Orsetti and Nicholas Francescutti were patrolling in a marked vehicle near the Canadian border in Ellenburg, New York, when they received a call to be on the lookout for an orange Ford Focus with New York license plates. Ellenburg is roughly 45 miles east of the Akwesasne Indian Reservation, which straddles the border between New York and Canada. The Reservation, which cannot be patrolled by federal agents, is known to authorities as a popular location for smuggling illegal aliens and myriad types of contraband, ranging from tobacco to drugs and weapons.
At approximately 10:30 p.m., the agents spotted the wanted car, which was being driven erratically and at a high rate of speed. They stopped the car, and after noting the smell of marijuana, conducted a search and found two duffel bags with approximately fifty pounds of marijuana in each. They also found a smaller bag containing approximately 40,000 pills (roughly twenty-seven pounds) of Benzylpiperazine (BZP), a schedule I controlled drug.[2] The agents arrested the driver, Xavier Robert. The agents also found a fuel receipt from a convenience store located within the Ak-wesasne reservation that was timestamped earlier that evening.
Robert was recruited to assist in the agents’ investigation of what appeared to be a drug deal. After he agreed to conduct a controlled delivery, Robert was taken to a motel room that he had rented days earlier in nearby Plattsburgh, New York, where he waited with the agents to receive instructions. The next morning, Robert participated in a series of phone conversations with two French-speaking men. He was eventually instructed to deliver the smaller bag — the one containing the 40,000 BZP tablets — to Rhode Island. Instructions in hand, the agents and Robert left the hotel and flew to Rhode Island.
Upon arrival in Rhode Island, Robert received a text message instructing him to contact a Rhode Island telephone number. He did so, asking for “Henry,” as he was also instructed to do. The person who answered the call (later identified as Liri-ano) however, told Robert that he had dialed a wrong number. After confirming with his contacts that he had, in fact, dialed correctly, Robert prepared to call again. Before he did so, however, Agent Robert Charles instructed Robert to tell “Henry” that he (Robert) “has a package of candy for you.” Robert called again and asked, “Are you supposed to see a guy today? To get some candy?” Liriano responded, “Ah ! Okay, okay, okay, okay.”
Robert and Liriano subsequently arranged to meet at 266 Adelaide Avenue in Providence. Robert informed his Canadian contact, who responded approvingly and told Robert to text him when the deal was done. At the urging of the agents, Robert made additional calls to both the Canadian contacts and Liriano, eventually changing the location of the meeting to a pharmacy parking lot in Providence.
When the two men met, Liriano expressed concern about surveillance cam *135 eras in the parking lot, passers-by watching them, and the New York license plates on the car that Robert was driving. He then tried to convince Robert to accompany him to his house, whereupon agents moved in and arrested both men. In Liri-ano’s wallet they found one business card for a motel on the Akwesasne reservation and another for an auto body shop in Montreal. His cell phone number was the same one that Robert had called three times and that had called Robert three times within the relevant time period.
Liriano and Robert were both charged for their roles in the thwarted deal. Robert pled guilty, but during what would turn out to be Liriano’s first trial, he refused to testify despite a grant of immunity. The court found Robert in contempt, and the trial ended with a hung jury. The government did not call Robert to testify in the second trial, which lasted two days and ended with Liriano’s conviction. This appeal followed the court’s denial of Liriano’s post-trial motions for judgment of acquittal and new trial.

II. ANALYSIS

A. Sufficiency of the Evidence

We review Liriano’s sufficiency claim de novo. United States v. Rios-Ortiz, 708 F.3d 310, 315 (1st Cir.2013). “[Rjeversal is warranted only where no rational factfinder could have concluded that the evidence presented at trial, together with all reasonable inferences, established each element of the crime beyond a reasonable doubt.” Id. (quoting United States v. Symonevich, 688 F.3d 12, 23 (1st Cir.2012)). We need not conclude “that no verdict other than a guilty verdict could sensibly be reached,” but must only be satisfied that the verdict finds support in a “plausible rendition of the record.” United States v. Hatch, 434 F.3d 1, 4 (1st Cir.2006) (citations omitted).
To sustain a drug conspiracy conviction, the government must prove beyond a reasonable doubt that an agreement existed to commit the underlying offense and that the defendant elected to join the agreement, intending that the underlying offense be committed. United States v. Paret-Ruiz, 567 F.3d 1, 5 (1st Cir.2009). An agreement to join a conspiracy “may be express or tacit ... and may be proved by direct or circumstantial evidence.” United States v. Rivera Calderon, 578 F.3d 78, 88 (1st Cir.2009). Finally, “each coconspirator need not know of or have contact with all other members, nor must they know all of the details of the conspiracy or participate in every act in furtherance of it.” United States v. Cortés-Cabán, 691 F.3d 1, 14 (1st Cir.2012), (quoting United States v. Martínez-Medina, 279 F.3d 105, 113 (1st Cir.2002)), cert. denied sub nom Domínguez-Colón v. United States, — U.S. -, 133 S.Ct. 2765, 186 L.Ed.2d 220 (2013).
Liriano argues that the evidence was sufficient to show only that he attempted to receive some undefined substance, not that he agreed to attempt to receive a controlled substance.[3] More specifically, he argues that the evidence only shows that he was familiar with a motel near the Akwesasne Reservation and a body shop in *136 Montreal, and that he met with Robert. A full and fair view of the evidence, however, reveals much more.
There is no dispute that Robert was operating with instructions to deliver BZP to Providence and that Liriano answered the phone associated with the number provided to Robert. Also, Liriano twice referred to “other people” in his conversations with Robert-in connection with his expectation of a call prior to Robert’s and whether those “others” had given Robert his address. The jury could have concluded that he was referring to Robert’s associates. Additionally, the jury could have found that the Canadian contact’s positive response indicated familiarity with the meeting address that Robert reported, suggesting that there had been previous contact with Liriano. Moreover, Liriano actually appeared at the parking lot to meet with Robert, further evidence that he was participating in the scheme. And he questioned the parking lot’s suitability, raising another inference that he was aware of the illegal activity. Finally, Liriano’s enthusiastic reaction to Robert’s use of the word “candy”-suggested as a euphemism for or description of the BZP pills[4]--supported a finding that he was a willing participant in the deal. Stripped to its essence Liriano’s argument is that the jury could only have found that his response to Robert’s calls was no more than a coincidence because he was awaiting delivery of some other material. The evidence is more than sufficient for the jury to have reasonably concluded otherwise.

B. Confrontation Clause

Liriano argues that two statements introduced to the jury violated his Confrontation Clause rights. The jury heard an audio recording of Agent Charles instructing Robert to use the word “candy” during his second call to Liriano, and of Robert subsequently using the term when speaking to Liriano. The inability to cross-examine Robert and Charles (neither of whom testified), Liriano claims, violated his confrontation rights in that it prevented him from exploring the meaning of the term “candy” with either of them. Finding that the argument was preserved, we review the claim de novo. United States v. Rivera-Rodríguez, 617 F.3d 581, 590 (1st Cir.2010), cert. denied, - U.S. -, 133 S.Ct. 1306, 185 L.Ed.2d 230 (2013).
The Confrontation Clause of the Sixth Amendment generally prohibits the admission of testimonial hearsay against a criminal defendant. See Crawford v. Washington, 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Under Crawford, a declarant’s testimonial out-of-court statement cannot be admitted consistent with the Confrontation Clause unless: 1) the declarant testifies; 2) the defendant had a prior opportunity for cross-examination; or 3) the statement is admitted for purposes other than for the truth of the matter asserted. United States v. Hicks, 575 F.3d 130, 143 (1st Cir.2009). In order to cut to the chase, we assume without deciding that Robert’s and Charles’s statements above were “testimonial.” See United States v. Phoeun Lang, 672 F.3d 17, 22 (1st Cir.2012) (observing that Crawford issue includes analysis of whether out-of-court statements were “testimonial”), cert. denied, - U.S. -, 133 S.Ct. 2730, 186 L.Ed.2d 935 (2013).
Here, the question posed by Robert to Liriano-“Are you supposed to see a guy today? To get some candy?”-falls *137 within the third Crawford exception in that it provided context for Liriano’s response. Indeed, this case is identical in all relevant respects to United States v. Santiago, 566 F.3d 65 (1st Cir.2009), in which we found no error in the admission of recordings of two government informants talking with the defendant about an upcoming drug transaction. Id. at 69. (“[T]he statements of the informants were not offered for their truth but as exchanges with Santiago essential to understand the context of Santiago’s own recorded statements arranging to ‘cook’ and supply the crack.”); see also United States v. Walter, 434 F.3d 30, 33-34 (1st Cir.2006) (affirming admissibility of informant’s end of a conversation with defendant as providing context for statements by defendant that constituted admissions under Fed.R.Evid. 801(d)(2)(A)). Accordingly, there was no error in admitting this statement.[5]
Agent Charles’s instruction to Robert takes us in a slightly different direction. Although the district court’s pretrial orders called for the defendant to propose any redactions to any recordings that the government intended to introduce, Liriano did not do so. Such a failure constituted a waiver. See United States v. Cianci, 378 F.3d 71, 104-05 (1st Cir.2004) (noting with approval district court’s use of pretrial order requiring defendant to propose redactions to evidentiary tapes and finding that district court’s waiver ruling was within its discretion). Notwithstanding Liriano’s failure to request a redaction, and even assuming that Agent Charles’s instruction to Robert was improperly before the jury, any error in admitting it was in any event harmless beyond a reasonable doubt. See United States v. Cabrera-Rivera, 583 F.3d 26, 36 (1st Cir.2009) (noting that where evidence is admitted in violation of the Confrontation Clause, we may affirm a conviction if the government demonstrates that the error was harmless beyond a reasonable doubt). The record shows that any error in admitting Charles’s comment likely redounded to Li-riano’s benefit: during closing argument defense counsel, in an attempt to undermine the government’s case, exploited the fact that Robert needed Charles’s prompting. Moreover, as we explained in rejecting Liriano’s sufficiency claim, the overall strength of the government’s case establishes that any error was harmless beyond a reasonable doubt. See id. (listing factors to consider in harmlessness evaluation).[6]
*138 C. Closing Argument[7]
Liriano alleges that certain comments made by the prosecutor during rebuttal constituted misconduct that warranted a new trial. Some stage-setting is in order. In closing, the prosecutor said:
“I am the guy you are supposed to see today. I am the guy with the candy. Okay. Okay. Okay.” Your jobs as jurors in this case is to determine whether or not there’s sufficient evidence to establish that this Defendant, Dennis Liriano, knew that “candy” meant illegal drugs.
The defense closing contained the following passage:
You’ve got the transcripts. You listen to the tape. And [in] that second telephone call Xavier Robert says, “You want some candy?” I’m paraphrasing it. I’ll stand by what the transcript says. But if you look at the call immediately before that, you will see at the very end, ... that the word “candy” is introduced into this case by an agent. It’s not something Xavier Robert came up with. It’s blood in the water for a shark. It’s bait. That’s what Dennis Liriano ... jumped at.
Defense counsel also argued:
If these pills were in a zipped up bag- and I interject that your memory controls this. I don’t think there’s any direct evidence in this case that the bag was even in the trunk of that Ford Focus. There was a lot of talk of how they went out and rented a Ford Focus and flew everybody down here, but I don’t recall either Special Agent Hollo-ran or Special Agent O’Neill, former Special Agent 0’Neill[,] testifying that the bag was actually in the trunk of that ear. But your memory controls that. By comparison, it’s a small point.
Next, the prosecutor began his rebuttal with:
[Defense counsel] has one of the greatest reputations in the state as a criminal defense attorney. He is a veteran litigator and a man that many of us who practice law here in Rhode Island look up to. He would never intentionally mislead you in any way, shape or form as to what the state of the evidence is or what issues you need to focus on.
Sometimes in our enthusiasm as advocates, we kind of miss the ball and we get ahead of ourselves. In this particular case, with the crime that’s been charged here, the crime of conspiracy, and please take a look at the instructions again if there’s any question in your mind as to what the elements of that offense are, it’s absolutely totally irrelevant as to whether or not there were even drugs in the trunk of the car.
Now, the evidence does show, I would suggest to you, and you may recall this testimony, that the agents dumped out the BZP into some other containers and they went out and they purchased over-the-counter drugs about the same size and color, you might recall that, as the BZP. They threw some random samplings of the BZP in the bag and the bag went in the trunk of the car. You’ll recall that testimony.
Finally, the prosecutor further argued:
[Defense counsel] says, you don’t know what the candy is. You don’t know what the candy is. Candy could be gray market goods.... No. Folks, ‘candy’ was a code word. [Defense counsel] says, Look at the transcript. The agent introduced the word ‘candy.’ *139 Of course I also, please, encourage you, look at that portion of the transcript where the agent says, Tell him you’ve got candy. These are veteran customs agents who have conducted countless numbers of drug investigations. Isn’t it reasonable to infer from the evidence that they know what the buzz words are in the drug trade? Of course it is. It’s only reasonable to conclude this is a phrase used in the drug trade. And it certainly hooked this Defendant, didn’t it? ‘I’m the guy with the candy. Okay. Okay. Okay.’
Liriano argues that the prosecutor’s statement that “candy” was a code word introduced to the jury a fact not in evidence. While the prosecutor indeed asked the jury to make that inference, he did not state that there was evidence proving the meaning of the “code word.”[8] His conduct therefore was not improper. See United States v. O’Shea, 426 F.3d 475, 485 (1st Cir.2005) (observing that a prosecutor may, during closing argument, attempt to persuade the jury to draw inferences from the evidence, but may not rely on knowledge or evidence unavailable to the jury). Given Liriano’s response to the word used by an individual ready to deliver a bag of pills, the inference was a permissible one.
Liriano also argues that the reference to “veteran Customs Agents” constituted improper introduction of evidence because Agent Charles, who provided the “candy” instruction to Robert, did not testify and there thus was no evidence of his experience. Charles’s partner, however, testified at length about his own experience and his partnership with Charles.[9] While the jury may have understood the prosecutor’s remarks to refer to both agents, the allegation of reversible misconduct falls short of the mark. In assessing a misconduct claim, we analyze 1) whether the conduct was isolated; 2) the presence of any curative instructions; and 3) the likelihood of prejudice affecting the outcome of the case. United States v. Gentles, 619 F.3d 75, 81-82 (1st Cir.2010). Here, there was no misconduct. And in any event, the comments were isolated and necessarily of limited effect, the jury was instructed that the attorneys’ arguments were not evidence, and the remainder of the evidence, along with the trial court’s instruction, ameliorated any potential prejudice. We therefore find no abuse of discretion in the district court’s denial of a new trial.
Finally, Liriano argues that the prosecutor’s praise of defense counsel, immediately followed by the claim that counsel misstated the evidence, amounted to an improper attack on defense counsel. First, there is no dispute that defense counsel did misstate the evidence with respect to whether a bag of pills was in the car. Second, in addition to correcting the misstatement, the prosecutor also argued that whether there were pills in the car was irrelevant, thus lessening the already slim chance that the jury would interpret the comments as a credibility attack. Finally, we again observe that any risk to the defendant was further ameliorated by the jury instruction that arguments are not evidence. On this issue, as well, there was no abuse of discretion in the denial of a new trial.

D. The Business Card

Liriano makes a brief argument that the Montreal body shop busi *140 ness card found in Liriano’s wallet should have been excluded as irrelevant.[10] Liriano’s argument is that the card was “simply a piece of paper” with no independent connection to the conspiracy. Relevant evidence, however, does not need to resolve a key issue in the case, but “only move the inquiry forward to some degree.” Bielunas v. F/V Misty Dawn, Inc., 621 F.3d 72, 76 (1st Cir.2010). “A relevancy based argument is usually a tough sell.” Id. Here, given the facts that the other participants in the conspiracy were Canadian and that Liriano’s wallet also contained a link to the Akwesasne Reservation, the business card was relevant.

III. CONCLUSION

The conviction is affirmed.

. Our factual recitation borrows from the district court's Opinion and Order denying Liri- *134 ano’s post-trial motions for acquittal and a new trial. United States v. Liriano, Cr. No. 09-100-S, 2011 WL 4435650 (D.R.I. Sept. 22, 2011).

. According to the United States Drug Enforcement Administration, BZP is a stimulant with no known medical uses in the United States. See U.S. Dept, of Justice, Drug Enforcement Administration, Office of Diversion Control, Drug & Chemical Evaluation Section, March 2014, available at http://www. deadiversion.usdoj.gov/drug_chem_info/bzp. pdf

. Liriano obliquely alludes to an argument that the government was required to prove his specific knowledge that the controlled substance at issue was BZP. Even assuming the argument is sufficiently fleshed out to be properly before us, it is contrary to our precedent. See United States v. Burgos, 703 F.3d 1, 10 (1st Cir.2012) ("[T]he Government must show that the defendant knew the conspiracy involved a controlled substance, but need not show that the defendant knew the specific controlled substance being distributed.” (emphasis in original)).

. A jury could reasonably find from the photograph of the BZP pills, which was an exhibit at trial, that the pills resembled little candies.

. We also note that although Liriano was permitted a standing objection to many putative hearsay statements, he never sought a limiting instruction with respect to Robert’s "candy” comment. See United States v. Mubayyid, 658 F.3d 35, 72 (1st Cir.2011), cert. denied, - U.S. -, 132 S.Ct. 2378, 182 L.Ed.2d 1052 (2012); see also United States v. Maher, 454 F.3d 13, 23 (1st Cir.2006) (finding no plain error where district court gave a limiting instruction following improper admission of testimony).

. We decline to adopt the government’s assertion that defense counsel’s closing argument constituted a waiver as a tactical decision. See United States v. Washington, 434 F.3d 7, 11 (1st Cir.2006). Although there is a dispute as to the precise contours of the objection, defense counsel did object to the audio tape's admission, and only tried to take advantage of the comment in closing, after the statement had been admitted. We similarly reject Liri-ano’s attempt to liken this case to United States v. Meises, 645 F.3d 5 (1st Cir.2011). There, the in-court witness testified in such a way that "a reasonable jury could only have understood [the witness] to have communicated that [the declarant] had identified appellants as participants in the drug deal.” Id. at 21; see also Maher, 454 F.3d at 23 (cautioning against use of "context” basis in a case where non-testifying informant identified defendant as a drug dealer). Robert’s statement, standing alone, carried no such inflammatory message.

. The parties tussle over whether these arguments were preserved. It is of no moment, because they fail under any standard of review.

. The district court expressly excluded a statement from Robert to an agent that "candy” was a code word for an illegal drug.

. In concluding that the government’s statement about “veteran customs agents” improperly introduced new evidence, the dissent erroneously ignores the testimony of Agent Charles’s partner, a veteran customs agent.

. Liriano does not argue that any probative value was outweighed by unfair prejudice, pursuant to Fed.R.Evid. 403.